## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SISVEL INTERNATIONAL S.A., 3G  )
LICENSING S.A.,  )
　　　　　　　　　　　　　　　)  C.A. No. 19-1144-MN
　　　　　　　　Plaintiffs,  )
　　　　　　　　　　　　　　　)  **JURY TRIAL DEMANDED**
　　　　　v.  )
　　　　　　　　　　　　　　　)
VERIFONE, INC.,  )
　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.  )

## DEFENDANT VERIFONE, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

OF COUNSEL:

Carolyn Chang
Hector J. Ribera
Ryan J. Marton
MARTON RIBERA SCHUMANN CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: (415) 360-2511

Date Served Pursuant to Fed. R. Civ. P. 11:
October 22, 2019

Date Filed: November 12, 2019

6451191 / 49355

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Tracey E. Timlin (#6469)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant VeriFone, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ........................................................................ 1

III.  STATEMENT OF FACTS ............................................................................... 3

     A.   The Second Amended Complaint .................................................................. 3

     B.   The Parties' Correspondence History ........................................................... 4

IV.  ARGUMENT ................................................................................................... 6

     A.   Legal Standard ............................................................................................... 6

     B.   3G Licensing and Its Attorneys Violated Rule 11 Warranting Dismissal of Claims ..... 7

          1.  The Accused Instrumentalities Cannot Infringe the Zinn Patents ........................... 7

              a.   The Zinn Patents ............................................................................. 7

              b.   A Pre-Suit Investigation Would Have Shown Verifone Cannot Infringe the Zinn Patents ............................................... 9

          2.  The Accused Instrumentalities Cannot Infringe the '503 Patent ........................... 15

     C.   Because Plaintiffs and Their Attorneys Failed to Conduct a Reasonable Pre-filing Investigation, Award of Attorneys' Fees Is Warranted ................................................. 15

V.   CONCLUSION ................................................................................................ 18

i

# TABLE OF AUTHORITIES

## CASES

*AgroFresh Inc. v. Hazel Technologies, Inc.*,
   C.A. No. 18-1486-MN, 2019 WL 1859296 (D. Del. Apr. 25, 2019) .........................................17

*Blue Spike LLC v. Comcast Cable Comm'ns, LLC*,
   C.A. No. 19-159-LPS-CJB, 2019 WL 4242930 (D. Del. Sep. 6, 2019).............................16, 17

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018).......................................................................................5, 16, 17

*Doering v. Union County Bd. of Chosen Freeholders*,
   857 F.2d 191 (3d Cir. 1988)..............................................................................................................7

*Gaiardo v. Ethyl Corp.*,
   835 F.2d 479 (3d Cir. 1987)..............................................................................................................7

*Lease v. Fishel*,
   712 F. Supp. 2d 359 (M.D. Pas. 2010) ...........................................................................................7

*Lieb v. Topstone Indus.*,
   788 F.3d 151 (3d Cir. 1986)..........................................................................................................6, 7

*LoganTree LP v. Omrom Healthcare, Inc.*,
   C.A. No. 18-1617-MN, 2019 WL 4538730 (D. Del. Sept. 19, 2019) ................................. 17-18

*Lony v. E.I. Du Pont de Nemours & Co.*,
   935 F.2d 604 (3d Cir. 1991)..............................................................................................................6

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
   202 F.3d 315 (D. D.C. 2000) ...........................................................................................................7

*Raindance Techs., Inc.*,
   C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)...........................................16

*SIPCO, LLC v. Streetline, Inc.*,
   230 F. Supp. 3d 351 (D. Del. Jan. 20, 2017) ............................................................2, 4, 16, 18

*Vehicle Operation Techs. LLC v. American Honda Motor Co. Inc.*,
   67 F. Supp. 3d 637 (D. Del. 2014)................................................................................................7

## RULES

Fed. R. Civ. P. 11 ......................................................................................................................6, 7

## I.      NATURE AND STAGE OF PROCEEDINGS

On September 13, 2019, Plaintiffs Sisvel International S.A. ("Sisvel") and 3G Licensing S.A. ("3G Licensing") (collectively, "Plaintiffs") filed their Second Amended Complaint ("SAC"), asserting claims of patent infringement against VeriFone, Inc. ("Verifone").[1]  (D.I.12)  Verifone waived service of process, which set the response deadline at November 12, 2019.  (D.I.13)

## II.     SUMMARY OF ARGUMENT

A review of the SAC reveals that Plaintiffs, at best, failed to conduct a reasonable patent infringement analysis before asserting their claims against Verifone.  At worst, they filed this lawsuit in blind disregard of the baseless nature of their claims.  Either way, their refusal to dismiss their meritless claims now warrants imposition of sanctions.

Allegations that Verifone's Carbon Mobile 5, UX 300, V400m, VX 680, and VX690 mobile payment devices (collectively "Accused Instrumentalities") infringe plaintiff 3G Licensing's patents exemplify the sanctionable nature of Plaintiffs' claims.  Evaluation of 3G Licensing's infringement claims do not require resolution of claim construction or analysis of complex technology.  3G Licensing alleges that by making, using selling, and offering to sell the Accused Instrumentalities, Verifone infringes seven of its patents.  *See* SAC (D.I.12) ¶¶ 16, 78-134, Exs. 6-12.  To infringe six of these patents, an accused device must have a visual display that displays either (1) the name of a home network, or (2) the name of an alternate network or an indication the device is roaming.  *See* SAC (D.I.12), Exs. 6-12.  A quick Internet search returns information that shows Verifone's Accused Instrumentalities display neither a network

---

[1] Sisvel claims to own five of the asserted patents:  U.S. Patent Nos. 6,529,561 ("the '561 patent"); 7,433,689 ("the '689 patent"); 8,364,196 ("the '196 patent"); 7,751,803 ("the '803 patent"); and 7,894,443 ("the '443 patent").  *Id*. ¶ 15, Exs. 1-5.  3G Licensing claims to own the other seven asserted patents:  U.S. Patent Nos. 7,274,933 ("the '933 patent"); 7,460,868 ("the '868 patent"); 7,596,375 ("the '375 patent"); 8,273,374 ("the '374 patent"); 8,472,955 ("the '955 patent"); 8,948,756 ("the '756 patent"); and 8,897,503 ("the '503 patent").  *Id*. ¶ 16, Exs. 6-12.

name nor an indication that the device is roaming.  *See* Section IV.B.1.b., below.  In fact, one of

the Accused Instrumentalities – Verifone's UX300 device – does not even have a visual display.

*See* Declaration of Carolyn Chang in Support of Verifone's Motion for Sanctions ("Chang

Decl."), Ex. A (available at https://www.verifone.com/sites/default/files/2017-08/ux300-ltr-

1216.pdf).  To infringe 3G Licensing's seventh patent, a device must manage voice services in

an "IMS voice over packet-switched session."  SAC (D.I.12), Ex. 12 (U.S. Patent 8,879,503)

("the '503 patent").  Again, had 3G Licensing and its attorneys reviewed readily available public

information regarding Verifone's products, they would know that the Accused Instrumentalities

do not have voice capabilities and cannot infringe the '503 patent.  *See* Section IV.B.2., below.

This disregard and lack of effort in conducting a reasonable pre-filing investigation is not

limited to just 3G Licensing's infringement claims.  It is evident throughout the entire SAC.

Plaintiffs and their counsel make "no attempt to connect anything in the patent claims to

anything about any of the accused [Verifone] devices." *See SIPCO, LLC v. Streetline, Inc.*, 230

F. Supp. 3d 351, 353 (D. Del. Jan. 20, 2017).  Despite having access to public information

regarding the devices (and the ability to acquire and inspect most of the devices), Plaintiffs and

their counsel make no allegations regarding the operation or any features or functions of the

Accused Instrumentalities.  *See* SAC (D.I.12) ¶¶ 15-16, 18-134.  Nor do they include any

allegations regarding the requirements of the asserted patent claims.  *Id.*  The SAC alleges only

that Sisvel and 3G Licensing own patents and that Verifone sells Accused Instrumentalities that

infringe those patents.  *See id.*  That is not enough to state a plausible claim for patent

infringement.  *See e.g.*, *SIPCO*, 230 F. Supp. 3d at 353 (finding allegations that plaintiff owns

patents, that the defendants sell products, and that sales of the products infringe the patents are

"insufficient to plausibly allege patent infringement.").

Verifone explained all this to Plaintiffs.  Chang Decl., Ex. F.  Nevertheless, Plaintiffs and their counsel elected to proceed despite having failed to state a cognizable claim for infringement and with evidence that makes clear that Verifone's Accused Instrumentalities cannot possibly infringe 3G Licensing's patents.  By stubbornly proceeding and forcing Verifone to bring this motion, Plaintiffs and their counsel should be sanctioned.  Accordingly, Verifone respectfully requests this Court to dismiss Plaintiffs' SAC and award Verifone attorneys' fees and costs incurred in defending this action, including in connection with filing this motion.

## III.    STATEMENT OF FACTS

### A.    The Second Amended Complaint

On September 13, 2019, Plaintiffs filed their SAC alleging that Verifone infringes twelve asserted patents.  (D.I.12).  Of the 174 paragraphs in the SAC, only five contain factual allegations regarding the asserted patents.  Three of the paragraphs allege that Sisvel and 3G Licensing are the rightful owners of the asserted patents.  SAC (D.I.12) ¶¶ 15-17.  The other two paragraphs allege that the twelve asserted patents "relate to technology for cellular communications networks such as, but not limited to 2G, 3G, and 4G/LTE," noting that "[c]ellular communication network technology is used to provide data transmission across mobile cellular networks."  *Id*. ¶¶ 13-14.  The SAC contains no other allegations regarding the purported inventions described in the asserted patents or the specific limitations or requirements of any asserted claims.

Allegations regarding Verifone's Accused Instrumentalities are equally sparse.  There are only two paragraphs describing Verifone's products and services.  They allege that Verifone "sells and offers to sell products and services . . . that incorporate infringing technology," specifically that Verifone "makes, uses, sells, offers for sale, provides and causes to be used . . . Carbon Mobile 5, UX 300, V400m, VX680, and VX690 ("Accused Instrumentalities"), among

3

other devices." *Id*. ¶¶ 8-9.  There are no other factual allegations regarding any of the Accused Instrumentalities.  There is no description of use.  No identification of customers.  And no identification of any operation, features, or functionalities of the Accused Instrumentalities.

The remainder of the SAC relies on these bare factual allegations to try to state twelve counts of patent infringement.  *Id*. ¶¶ 18-147.  Each count follows the same formula:  (1) identify the asserted patent, (2) allege ownership, (3) allege Verifone's manufacture, use, sale, and offer for sale of the Accused Instrumentalities, and (4) conclude summarily that such manufacture use, sale, and offer for sale constitutes infringement of the identified patent.  *Id*. There are no allegations linking any feature of any of the Accused Instrumentalities to any limitation or requirement of any asserted patent.

## B.     The Parties' Correspondence History

Given the scant allegations in the SAC, on September 30, 2019, Verifone sent Plaintiffs and their counsel a letter, pointing out the deficiencies with the infringement claims.  Chang Decl., Ex. F.  Verifone urged Plaintiffs to amend their complaint to provide the requisite factual allegations as to how Plaintiffs contend the Accused Instrumentalities practice the limitations of the asserted patent claims.  *Id*. at 1-2.  As Verifone explained, at a minimum, such allegations are necessary to show that Plaintiffs had a Rule 11 basis to bring the infringement claims.  *Id*., *citing SIPCO*, 230 F. Supp. 3d at 353 (stating that the plaintiff must have a view as to how an accused device meets certain limitations of the asserted claims to have a Rule 11 basis to bring suit).

More importantly, Verifone explained that even a cursory pre-filing investigation would have shown that 3G Licensing and its counsel had no basis to assert infringement of the 3G Licensing patents.  Chang Decl., Ex. F at 2-4.  Specifically, Verifone showed that product data sheets and descriptions available on the Internet made clear that Verifone's Accused

4

Instrumentalities did not have features required by each of 3G Licensing's patents. *Id.* Had 3G Licensing and its counsel exercised even minimal due diligence, they should not have brought suit against Verifone. *Id.*

After receiving no response from Plaintiffs, on October 14, 2019, Verifone followed up again requesting Plaintiffs to dismiss their claims. Chang Decl., Ex. G. Counsel for Plaintiffs indicated they were preparing a written response, but made no indication that they would dismiss or amend claims. *Id.* Two days later, on October 16, 2019, Plaintiffs provided a written response, relying on *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018), to argue that their bare allegations were sufficient under the pleading standards set by *Iqbal* and *Twombly*. Chang Decl., Ex. H at 1.

As to the claims that Verifone infringes 3G Licensing's patents, Plaintiffs primarily argue that they are entitled to fishing-expedition discovery to determine whether the Accused Instrumentalities meet the requirements of the asserted patent claims. *Id.* at 2-3 ("Plaintiffs are entitled to engage in discovery to determine whether your assertions about the capabilities of these devices are accurate"; "Plaintiffs are entitled to engage in discovery which will include Verifone's production of manuals and other documents concerning the internal workings of these devices"; "We are entitled to seek internal documents, manuals, and source code"). Plaintiffs do not, however, identify what investigation they have conducted or what materials they have reviewed that would support bringing infringement claims that would entitle them to burden Verifone with such discovery. They simply state that "it is not clear from the information we have reviewed" that "Verifone devices do not show a home or alternative network name." *Id.*

For the accused UX300 device that Plaintiffs concede does not have a visual display, Plaintiffs assert that "we anticipate that discovery will show that there are a number of ways that

information from this device may be displayed.  Thus, while this particular device may not – by

default – have a visual display, we believe that it is still capable of infringing the Zinn patent

either directly or indirectly." *Id*.  Plaintiffs ignore that it is their initial burden to conduct an

investigation that supports bringing infringement claims in the first instance.

On October 22, 2019, Verifone served Plaintiffs with a copy of this motion, responding

to their letter and explaining that their positions were insufficient under the law.  Chang Decl.

¶ 13.  Verifone again requested Plaintiffs to dismiss and/or amend their SAC.  To date, 3G

Licensing and its counsel have yet to dismiss 3G Licensing's infringement claim and Plaintiffs

have not indicated they will amend the SAC to state a cognizable claim for patent infringement.

*Id*.

## IV.    ARGUMENT

### A.    Legal Standard

Rule 11 provides a remedy for pleadings that are "frivolous, legally unreasonable, or

without factual foundation, even though . . . not filed in subjective bad faith."  *Lieb v. Topstone*

*Indus.*, 788 F.3d 151, 157 (3d Cir. 1986).  Rule 11 provides:

> By presenting to the Court a pleading, written motion, or other paper
> – whether by signing, filing, submitting, or later advocating it – an
> attorney or unrepresented party certifies that to the best of the
> person's knowledge, information, and belief, formed after an
> inquiry    reasonable    under    the    circumstances    .    .    .
>
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11.  The Third Circuit applies a test of "objective reasonableness," which is

intended to discourage pleadings "without factual foundation, even though the paper was not

filed in subjective bad faith."  *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 616 (3d

Cir. 1991).

Dismissal of claims as a Rule 11 sanction is appropriate where the asserted claims are frivolous.  *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *Lease v. Fishel*, 712 F. Supp. 2d 359, 368 (M.D. Pas. 2010); *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D. D.C. 2000) ("Dismissal is a legitimate sanction under Rule 11").  Thus, the determination of whether Plaintiffs and Plaintiffs' attorneys "violated Rule 11 requires the determination of whether an objective pre-suit investigation would have disclosed that the accused products did not infringe the [patents'] claims."  *Vehicle Operation Techs. LLC v. American Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 641 (D. Del. 2014).  Monetary sanctions in the form of an award of attorneys' fees are also appropriate where Plaintiffs fail to conduct a reasonable pre-suit investigation.  Fed. R. Civ. P. 11(c)(4); *Lieb*, 788 F.2d at 155-56; *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).  Courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Lieb*, 788 F.2d at 156.

**B.    3G Licensing and Its Attorneys Violated Rule 11 Warranting Dismissal of Claims**

**1.    The Accused Instrumentalities Cannot Infringe the Zinn Patents**

a.    <u>The Zinn Patents</u>

The SAC includes seven counts of patent infringement asserted by 3G Licensing and its attorneys.  SAC (D.I.12) ¶¶ 78-147.  3G Licensing's asserted patents fall into two families.  The first family consists of six patents, all of which share the same specification and list Ronald Scotte Zinn as the first named inventor ("Zinn Patents").  *Id*., Exs. 6-11.

The Zinn patents are directed to methods and apparatus for displaying the name of the network to which a mobile device is connected.  *E.g.,* '933 patent (D.I., Ex. 6) at Abstract.  The

patents explain that more than one wireless network is typically available in many geographic regions, but a mobile device will typically select and register with the network of the service provider with which the user has contracted. *Id*. at 1:28-37. Typically, the device will then display the name of the service provider (*e.g.*, "T-Mobile" or "AT&T Wireless"). *Id*. at 1:37-53. If the user is out of range of its contracted service provider, the mobile device may connect to an alternate network, which may belong to a competitor or to a provider that is in a cooperative relationship with the user's provider. *Id*. at 1:54-2:5. In the conventional system, where the name of the network provider is displayed, a user may not know whether he or she is on a network of a cooperative provider or incurring roaming fees on a competitor network. *Id*. at 2:3-37. The Zinn patents purport to solve this problem by displaying a "home network display name" when a device is connected to any of a number of networks included on a preferred network list. *E.g. id*. at 2:44-67. This way users can determine easily whether they are on a network controlled or cooperating with their provider ("home network") or whether they are incurring roaming charges.

The patent claims include many limitations regarding how to include other networks on a preferred "home network" list and how to determine whether the device is connected to a network on the preferred list. In addition to these limitations, each of the asserted claims of the Zinn patents also requires displaying on a visual display of the claimed mobile station either a (1) home network display name or (2) an alternate display name or an indication that the device is roaming. *See* '933 patent (D.I.12, Ex. 6), claim 1; '868 patent (D.I.12, Ex. 7), claims 1 and 7; '375 patent (D.I.12, Ex. 8), claims 1 and 9; '374 patent (D.I.12, Ex. 9), claims 1, 10, 19, and 27; '955 patent (D.I.12, Ex. 10), claims 1 and 12; '756 patent (D.I.12, Ex. 11), claims 1 and 12.

        b.       <u>A Pre-Suit Investigation Would Have Shown Verifone Cannot Infringe the Zinn Patents</u>

3G Licensing and its counsel allege that Verifone's Accused Instrumentalities infringe the Zinn Patents. A simple review of Verifone's product descriptions demonstrates otherwise. Putting aside the fact that Verifone's products do not perform as the asserted claims require, none of the Accused Instrumentalities displays the name of a network or an indication of roaming on a visual display of the device. Verifone makes its product data sheets available on its website. Chang Decl. ¶¶ 3-5, 7, and 9. Thus, a simple Internet search would have shown that Verifone's accused UX 300 device does not even have a visual display on which to display anything, let alone a network name:



9

*Id.*, Ex. A (available at https://www.verifone.com/sites/default/files/2017-08/ux300-ltr-1216.pdf).

Plaintiffs attempt to overcome this obvious deficiency by now arguing that UX 300 can be configured with other display devices or that there are many different ways the UX 300 may display information.  Chang Decl., Ex. H at 2.  Plaintiffs ignore that they made no such allegations in the SAC.  More importantly, they ignore that the Zinn patent claims require display on a *visual display* of the device.  *E.g.*, '933 patent (D.I.12, Ex. 6) at 17:50-53 ("causing the home network display name . . . to be visually displayed in a visual display of the mobile station").  The UX 300 cannot display anything in its visual display if it has no visual display.

The other four Accused Instrumentalities do have a visual display, but Verifone's public documentation regarding those products show that they do not display network names:



Chang Decl., Ex. B (available at https://www.verifone.com/sites/default/files/201803/carbon_mobile5_datasheet_ltr_030818.pdf).  As shown in the below inset, the Carbon Mobile 5 displays

an indication that the device is connected to a network, but does not display any network name or indication that the device is roaming:

*Id* (markings added).

The same is true with the accused Verifone V400m device. The public datasheet shows that the device does not display a network name or indication of roaming:

Portable Hardware

Verifone

Verifone V400m

The Verifone V400m, part of the Verifone Engage portfolio, leverages
he power and performance of our latest V/O S in a modern
lication environment. This stylish, compact device can support
offers and other revenue-generating opportunities. Multiple
ctivity options offer maximum port ability and flexibility for
ants on the go and in store—and with its large, capacitive,
h color touch display, intuitive user interface, greater memory,
ster processing speed, the V4 00m is great for pay-at-the-table,
de delivery, kiosks, and line-busting.

xible connectivity: 4G LTE, dual-band WiFi, and Bluetooth BLE

B connector for camera, barcode scanner, biometric readers

ximum security and compliance with end-to-end encryption

cepts all payment types: NFC/CTLS, mobile wallets, EMV,
gstripe

- Supports a variety of apps with Verifone's Merchant Marketplace

Chang Decl., Ex. C (available at https://www.verifone.com/sites/default/files/2018-02/v400m_datasheet_ltr_020518.pdf).  Video available on the Internet showing the V400m in use also confirms that device does not display a network name or indication of roaming:



*See* Chang Decl., ¶ 6, discussing Verifone video available at https://www.youtube.com/watch?v=UhunEoYJGPE).

The VX 680 datasheet likewise shows that there is no display of network names or an indication of roaming:



Chang Decl., Ex. D (markings added) (available at https://www.verifone.com/sites/default/files/2017-12/vx680_datasheet_ltr_032317.pdf).  Video showcasing the VX 680 in use also confirms that the device does not display a network name or indication of roaming on the visual display:



Chang Decl., ¶ 8, referencing video available at https://www.youtube.com/watch?v=vCUdr0mZPM4.

Finally, Verifone documentation regarding the accused VX 690 device also shows the device does not display a network name or roaming indication:



Chang Decl., Ex. E (available at https://www.verifone.com/sites/default/files/2017-12/vx690_datasheet_ltr_012617.pdf).

There is nothing in the SAC or in Plaintiffs' correspondence with Verifone that indicates Plaintiffs have reviewed or analyzed anything that would give them any basis to believe that Verifone's Accused Instrumentalities perform the "displaying" of network names required by the Zinn patents. The only argument that Plaintiff advances is that because the products support 2G, 3G, or 4G LTE cellular connectivity, they must be standard compliant and be capable of the network name display required by the Zinn patents. Chang Decl., Ex. H. This argument is flawed for several reasons. First, Plaintiffs make no showing that any of the asserted patents is essential to any 2G, 3G, or 4G LTE standards. Nor do they make any showing that the 2G/3G/4G LTE standards require the same display required by the Zinn patents. Finally, even if compliance with cellular standards meant that Verifone's products are capable of displaying

14

network names, the fact remains that a pre-filing investigation would show that Verifone's accused devices do not, in fact, display network names, as shown above.

### 2.     The Accused Instrumentalities Cannot Infringe the '503 Patent

3G Licensing's claims with respect to the '503 patent are equally frivolous.  The '503 patent is directed to methods and apparatus for managing voice services in evolved packet systems.  '503 patent, Abstract.  Each of the asserted claims of the '503 patent includes limitations directed to an "IMS voice over packet-switched session."  *E.g. id*. claim 1.  None of the accused Verifone devices includes any voice capability, however.

If Plaintiffs had conducted any pre-filing investigation, they would know that each of Verifone's Accused Instrumentalities are mobile payment devices used to process electronic payments.  *See* Chang Decl., Exs. A-E.  They are not used for voice calls and the publicly available datasheets for the products show that the devices do not have any voice capability features.  *Id*.  Plaintiffs refuse to acknowledge this, again making the leap – without any support whatsoever – that if the products are cellular standards compliant then Plaintiffs "believe that the devices may yet be capable of exercising the '503 patent."  *Id*., Ex. H at 3.  A generalized hope or belief that products may be capable of practicing a patent is not sufficient grounds to bring suit and impose upon Verifone the burden of defending a patent lawsuit.  Rule 11 requires Plaintiffs to have an "objectively reasonable" basis for bringing suit.  None exists here.

### C.     Because Plaintiffs and Their Attorneys Failed to Conduct a Reasonable Pre-filing Investigation, Award of Attorneys' Fees Is Warranted

Finally, Plaintiffs' inability to state a plausible claim for patent infringement in the SAC further reflects their lack of pre-filing investigation.  In asserting patent infringement, the SAC simply alleges (1) Plaintiffs' ownership of the asserted patents, (2) Verifone's manufacture, use, sale, and offer for sale of the Accused Instrumentalities, and then (3) concludes that such

manufacture use, sale, and offer for sale constitutes infringement of the identified patent.  SAC (D.I.12) ¶¶ 18-147.  The SAC does not expound on the subject matter of the inventions.  It does not describe or set forth any requirements or limitations of the asserted patents.  And it does not provide any description of any of the Accused Instrumentalities, other than to identify them by name.

Verifone pointed out in its September 30 correspondence with Plaintiffs that the SAC's limited factual allegations coupled with conclusory allegations of infringement are insufficient to state a plausible claim of patent infringement.  Chang Decl., Ex. F at 1.  Courts in this District have repeatedly found the exact allegations put forth by Plaintiffs to be insufficient to state a cognizable claim.  *See e.g., Blue Spike LLC v. Comcast Cable Comm'ns, LLC*, C.A. No. 19-159-LPS-CJB, 2019 WL 4242930, at *2-4 (D. Del. Sep. 6, 2019) (finding allegations that aver ownership of patents, describe the accused device, and then conclude infringement without more are insufficient to state a claim for patent infringement); *SIPCO*, 230 F. Supp. 3d at 353 (noting that "no ethical lawyer would bring this lawsuit if the plaintiff could not allege more" than just that defendants sell accused products and that the products infringe); *Raindance Techs., Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016) (finding complaint that "makes no attempt to relate any factual assertions" regarding the accused devices "with any of the asserted claims" did not state a claim for patent infringement).

Plaintiffs and their counsel do not and cannot distinguish any of these cases.  Instead, they rely on *Disc Disease* to argue that their limited allegations are enough to pass muster at the pleadings stage.  Chang Decl., Ex. H at 2-3, *citing* 888 F.3d at 1260.  But *Disc Disease* is inapposite.  There, the Federal Circuit found the allegations sufficient to state a patent infringement claim for several reasons, none of which applies here.  First, *Disc Disease* found

that the asserted patents were directed to very simple technology – an air injectable band with a rigid panel to be worn around the waist to relive back pain – and consisted of only four independent claims.  888 F.3d at 1260.  Plaintiffs here assert twelve patents, many with over 20 claims each (including 2-4 independent claims each).  And the technology here is not directed to readily observable features of a back brace.  According to Plaintiffs, the asserted patents relate to three different cellular networking technologies.  Second, *Disc Disease* noted that in addition to identifying the accused products, the plaintiff attached photographs of the accused products and their packaging.  *Id*.  Plaintiffs did not do that here.  In fact, as explained above, inclusion of photographs of Verifone's products in this case would demonstrate that the Accused Instrumentalities do not display the home or roaming network and therefore fail to meet the limitations of the asserted claims.  Finally, while not a stated basis for the court's decision, the plaintiff in *Disc Disease* sought to amend its complaint to include a detailed infringement analysis.  *Id*. at 1259.  Here, even at Verifone's behest, Plaintiffs and their counsel refuse to amend their complaint to include even a rudimentary infringement analysis.

Moreover, since the Federal Circuit's decision in *Disc Disease*, this District has continued to find allegations that mirror those asserted by Plaintiffs to be insufficient.  *See Blue Spike*, C.A. No. 19-159-LPS-CJB, 2019 WL 4242930, at *2-4.  Other cases in this District that have found pleadings sufficient under *Disc Decision* involved pleadings that either included claim charts or described features of the accused devices and how they met each and every limitation of the asserted claims.  *See e.g. AgroFresh Inc. v. Hazel Technologies, Inc*., C.A. No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (complaint included allegations describing the patented technology as well as features of the accused devices that the plaintiff claimed met the limitations of the asserted claim); *LoganTree LP v. Omrom Healthcare, Inc*.,

C.A. No. 18-1617-MN, 2019 WL 4538730, at *3 (D. Del. Sept. 19, 2019) (complaint included allegations describing how the accused products met each and every limitation and included claim charts).  Plaintiffs' SAC does not include any claim charts and aside from naming the accused devices, does not make a single allegation about what those devices are, what features they have, or how they are used.  As this Court articulated in *SIPCO*, Plaintiffs and their counsel "should be able to allege a lot more than it has, as no ethical lawyer would bring this lawsuit if it could not allege more."  230 F. Supp. 3d at 353.  Plaintiffs and their counsel need to allege what it is about the accused devices that they contend meet the limitations of the asserted claims or else their claims should be dismissed.  Either way, the SAC is deficient and given Plaintiffs and their counsel's refusal to dismiss or amend the complaint voluntarily, this Court should award Verifone its attorneys' fees and costs incurred in bringing this motion and any related motion to dismiss.

## V.      CONCLUSION

For the foregoing reasons, Verifone respectfully requests this Court dismiss 3G Licensing's claim with prejudice and award attorneys' fees against Plaintiffs and their counsel for pursuing meritless claims without conducting a reasonable pre-filing investigation as required by Rule 11.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

     David E. Moore (#3983)

Carolyn Chang

     Bindu A. Palapura (#5370)

Hector J. Ribera

     Stephanie E. O'Byrne (#4446)

Ryan J. Marton

     Tracey E. Timlin (#6469)

MARTON RIBERA SCHUMANN CHANG LLP

     Hercules Plaza, 6th Floor

548 Market Street, Suite 36117

     1313 N. Market Street

San Francisco, CA 94104

     Wilmington, DE  19801

Tel:  (415) 360-2511

     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     sobyrne@potteranderson.com

Date Served Pursuant to Fed. R. Civ. P. 11:

     ttimlin@potteranderson.com

October 22, 2019

Date Filed:  November 12, 2019

*Attorneys for Defendant VeriFone, Inc.*

6451191 / 49355

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on October 22, 2019, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

**<u>VIA HAND DELIVERY</u>**

Timothy Devlin
Neil A. Benchell
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806

**<u>VIA ELECTRONIC MAIL</u>**

Timothy Devlin
Neil A. Benchell
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
tdevlin@devlinlawfirm.com
nbenchell@devlinlawfirm.com



*/s/ David E. Moore*
David E. Moore

6310737 / 49355